LUELLA HEFFRON, an Infant, by WILLIAM HEFFRON, Her Guardian ad Litem, Appellant, *v.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

**Railroads — negligence — contributory negligence — injury to prospective passenger by tripping and falling over wire in grass plot maintained at railroad station — question for the jury.**

Defendant, a railroad company, maintained, adjacent to the walks leading to its station, a plot for grass and flowers through which was stretched a wire suspended on posts and hanging a short distance from the ground. There is evidence that for a long time, and in fact as a usual thing, people in going to and from the railroad station, had crossed the grass plot without restriction, stepping over the wire in so doing and frequently, even in the day time, people were seen to trip over the wire, and that some of the railroad men had been notified of this fact, so that a jury might have found that notice to the defendant was fairly to be inferred from such evidence. The night of the accident in question was dark and the grass plot was not lighted and plaintiff, who was unacquainted with the situation, and was hastening from the adjacent street to take an electric car of the defendant, which had just stopped to take on passengers, hurried across the grass plot, although there was evidence to the

effect that there was another and apparently unobstructed course, and in so doing tripped over the wire, which she did not see, and fell receiving serious injuries for which this action is brought. The judgment of the trial court dismissing the plaintiff's complaint has been affirmed by the Appellate Division by a divided court. *Held,* error; that it was a question of fact for the jury whether the defendant, under all of the circumstances, was negligent in maintaining a wire of the kind, at a place, and at a height from the ground where it did maintain it, in the grass plot of the depot grounds, and whether, also, the plaintiff, who was unfamiliar with the surroundings, was guilty of contributory negligence in crossing the grass plot.

*Heffron* v. *N. Y. C. & H. R. R. R. Co.,* 175 App. Div. 962, reversed.

(Argued May 9, 1918; decided May 28, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 12, 1916, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles A. Hitchcock* and *John L. Robertson* for appellant. The questions of the defendant's negligence and plaintiff's contributory negligence should have been submitted to the jury. (*Fogarty* v. *Bogart,* 43 App. Div. 430; 59 App. Div. 114; *Lamore* v. *Crown Point Iron Co.,* 101 N. Y. 391; *Carson* v. *Dessau,* 142 N. Y. 445; *Ruppert* v. *B. H. R. R. Co.,* 154 N. Y. 90; *Beck* v. *Carter,* 68 N. Y. 290; *Sterger* v. *Van Sicklan,* 132 N. Y. 503; *Barry* v. *N. Y. C. & H. R. R. R. Co.,* 92 N. Y. 289; *Boyce* v. *Man. Ry. Co.,* 118 N. Y. 318; *Lentino* v. *Port Henry Iron O. Co.,* 71 App. Div. 467; *Secief* v. *N. Y. C. & H. R. R. R. Co.,* 102 App. Div. 168.) The court erred in granting a motion for a nonsuit. The mere fact that the Appellate Division upon a previous appeal, held upon the same evidence that the verdict of the jury was against the weight of evidence upon the

question of the defendant's negligence and the plaintiff's contributory negligence, did not justify the court in granting the motion for a nonsuit. The question should have been submitted to the jury for determination, and if erroneously determined, should have been reviewed upon a motion for a new trial. (*McDonald* v. *Met. St. Ry. Co.*, 167 N. Y. 66.)

*A. H. Cowie* for respondent. Defendant was not negligent. (*Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 494; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 195 N. Y. 267; *Flynn* v. *Central R. R. Co. of N. J.*, 142 N. Y. 439; *Dougherty* v. *Village of Horseheads*, 159 N. Y. 154; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Macomber* v. *City of Taunton*, 100 Mass. 255; *Robert* v. *Powell*, 168 N. Y. 411.)

CHASE, J. The plaintiff tripped over a wire hung from posts in that part of the grounds surrounding the Canastota depot which is devoted to a grass and flower plot, and sustained personal injuries. This action is brought to recover damages for such injuries.

There have been two trials of the action. The plaintiff recovered a verdict at the first trial but the judgment entered thereon was reversed by the Appellate Division and a new trial granted " As against the weight of evidence both as to the defendant's negligence and the plaintiff's freedom from contributory negligence." (*Heffron* v. *N. Y. C. & H. R. R. R. Co.*, 140 App. Div. 943.) Two of the justices of that court dissented. On the second trial the evidence taken on the first trial was submitted. The plaintiff's complaint was dismissed. On appeal the Appellate Division affirmed the judgment entered upon such dismissal. Two justices of the court dissented and voted " For reversal on the ground that the case presented an issue of fact which should have been submitted to the jury. This court [the Appellate

Division]·reversed a judgment for the plaintiff on a
former appeal on the ground that the verdict was against
the weight of the evidence and ordered a new trial (140
App. Div. 943), at which new trial the evidence should
again have been submitted to the jury; the record in the
second trial being precisely the same as that in the
first." *(Heffron* v. *N. Y. C. & H. R. R. R. Co.,* 175
App. Div. 962.)

The only question for consideration on appeal to this
court is whether the record discloses a question of fact
that should have been submitted to the jury.

The defendant's four-track railroad passes through
the village of Canastota from east to west and adjoining
such tracks on the south is the track of the Lehigh
Valley Railroad Company. Peterboro street in said
village crosses said railroad tracks at right angles. The
defendant's depot is west of Peterboro street and is sur-
rounded by a platform. The distance from the east end
of the platform to Peterboro street is about one hundred
feet. About one hundred feet south of the defendant's
tracks and the track of the Lehigh Valley railroad are the
electrified tracks of the West Shore railroad which tracks
there run parallel with the defendant's railroad. The
West Shore railroad tracks run south of the defendant's
depot and the depot is used in common by the railroads
mentioned. There is, as shown, a parcel of uninclosed land
occupied by the defendant which is about one hundred feet
square bounded on the east by Peterboro street, on the
west by the platform of the defendant's railroad depot,
on the north by the railroad tracks as stated and on the
south by the West Shore railroad tracks. There is a cinder
path about twelve feet wide running along the northerly
side of this parcel of land and extending from the depot
platform to Peterboro street. There is also a plank walk
parallel to the West Shore railroad tracks extending
along the southerly side of this parcel of land from the

platform to Peterboro street. Between the two walks there is on the north a level piece of ground about sixteen feet wide extending from the platform to Peterboro street which is devoted to grass, except that on either end there are rose bushes and perhaps other shrubs and flowers. South of this grass and flower plot there is an open space about forty feet wide used for teams and vehicles. Between the open space so used for teams and vehicles and the plank walk, there is a piece of land five or six feet wide that is also devoted to grass and shrubbery. Erected between this grass plot and the platform is a railing dividing one from the other. The shrubs and flowers on the grass plot first mentioned are confined to the ends thereof leaving the center for fifteen or more feet a plain lawn. About three feet from the southerly side of the grass plot and in the center thereof the defendant for more than one year prior to the accident maintained a wire attached to posts. The wire was attached to the posts about one foot from the ground, but it sagged in the center so that it was there about eight and three-quarter inches above the ground.

The plaintiff, a young lady eighteen years old, but who had not been in Canastota since she was a small child, came to that village with her brother on July 4, and spent the afternoon and evening there. After a display of fireworks in the village they started for the depot to take an electric car which was due to arrive about 9:34 P. M. When at the corner of a hotel building on the west side of Peterboro street next north of the railroad tracks they saw the electric car arriving. The car stopped opposite the eastern end of the defendant's depot and people were entering it. The plaintiff, holding her brother by the hand, started with others, some of whom were ahead of them, in a diagonal direction from Peterboro street, across the railroad track and the open grass plot in a direct line for the electric car. They tripped and

fell over the wire that we have described and the plaintiff received serious injuries.

The record contains testimony showing that people going to and from the railroad depot had for a long time prior to the accident to the plaintiff crossed the defendant's northerly grass plot from time to time without any express restrictions. A policeman of the village who had been on duty about the depot grounds for several years, referring to a time before the accident to the plaintiff, testified that he had many times observed that grass plot being used by the public in going to and from the depot and the cars. He also testified that when a car was arriving at the depot it was usual for the public to cross the grass plot. He also testified that he had seen pedestrians trip over that wire a dozen or more times and that he mentioned to " some of the railroad men " that he had seen people trip over the wire. Other testimony was given that people passed over the grass plot at different times going to and from the depot. The jury might have found that notice to the defendant was fairly to be inferred from such testimony.

The night of the accident was dark and the grass plot was not lighted, but there was testimony for the jury's consideration in substance that on the night in question there was a direct course apparently unobstructed from where the plaintiff started at the corner of the hotel building to the place where the electric car stopped, and that other people were crossing along such direct and unobstructed way.

The grass plot constituted a part of the defendant's property. While its purpose was for ornamentation and not expressly for use by its passengers, the possibility of its use by passengers, particularly at times when an unusual number of persons were being cared for and carried by the railroad, was a fact that should have been considered by the defendant in determining the probability

of the grass plot being used by persons hastening to or from trains or cars. The plaintiff was a patron of one of the railroads using the defendant's depot and surrounding grounds. She was on its property by invitation. It is claimed, however, that the invitation was restricted to the parts of the defendant's grounds that were intended by it for walks or paths.

It is the duty of a railroad corporation to provide for a passenger a safe passage to the train he desires to take and to take reasonable care that he shall not while on its premises be exposed to any unnecessary danger or to one of which it is aware. (*Carpenter* v. *Boston & Albany R. R. Co.*, 97 N. Y. 494.)

If the person is on the property of another by invitation arising out of a common interest or mutual advantage between them, the owner owes such person a duty and a failure to perform that duty subjects him to liability. The plaintiff in this case was not on the defendant's property generally as a licensee, or as a trespasser. In that respect her case is entirely different from that of *Larmore* v. *Crown Point Iron Company* (101 N. Y. 391). The measure of the defendant's duty was reasonable prudence and care, but reasonable prudence and care to be measured by the circumstances and surroundings of which the defendant was aware. In *Sterger* v. *Van Sicklen* (132 N. Y. 499, 503) the court say: " There are cases where the use to which an owner of property puts it is of such a public character that he is bound to observe reasonable care in keeping it in such a condition as to save, harmless, those who are invited to come on to it for the benefit and profit of the owner."

In this case there was some evidence for the jury to consider as to the sufficiency of the alleged restrictions in the use of the defendant's depot grounds. Were the restrictions adequate and sufficient so that the defendant was justified in leaving a wire as described? If the

defendant, instead of hanging the wire in the interior of the plot and so near to the ground that it was practically useless to prevent people crossing the grass plot in the day time when they could see and step over it and so close to the ground that it was not easily discernible in the night time, had placed a railing between the cinder path and the grass plot as it did between the platform and the grass plot on the southerly side of the depot grounds, the danger of injury to its patrons would have been minimized or wholly avoided.    There is a distinction between the obligation of an owner of private property wholly outside the boundaries of a highway and the obligation of a railroad company maintaining on its depot grounds a grass plot for ornamental purposes where at times such as a public holiday the use of such grass plot by pedestrians is not only possible but probable.

Was the defendant under all the circumstances negligent in maintaining a wire of a kind, at a place, and at a height from the ground where it did maintain it in the grass plot of the depot grounds, and was the plaintiff who was unfamiliar with the surroundings guilty of contributory negligence in crossing the grass plot?

The question before us is not one as to the weight of evidence but simply whether as a matter of law the questions suggested relating to the alleged negligence of the defendant and contributory negligence of the plaintiff were questions of fact.

We think that the nonsuit was improperly granted. The judgment should be reversed and a new trial granted, with costs to abide the event.

HOGAN, POUND, McLAUGHLIN and ANDREWS, JJ., concur; HISCOCK, Ch. J., and CARDOZO, J., not voting.

Judgment reversed, etc.