Dorothea E. Donaldson, J.
It was stipulated at the trial of this claim for damages for personal injuries and loss of services that the issue of liability due to the negligence of the defendants was to be determined initially and if the defendants were found to be liable, the trial would continue for the claimants to produce proof on the issue of damages.
The incident from which the alleged damages emanated occurred about 10:30 p.m. on the night of July 21, 1962 on the premises of the Eamapo Service Area situated on the southbound side of the New York State Thruway. This blacktop service area could be considered as divided into three portions; one portion was utilized solely as a parking and rest area; another portion contained islands for the gasoline pumps and other miscellaneous supplies required by the automotive customers, and another portion was the parking area near the entrance to the concrete overpass to the northbound service area wherein were located restaurant and rest room facilities. Encircling the entire southbound service area was concrete curbing 6 to 8 inches in height. Upon the parking portions of the blacktop had been painted solid white lines outlining parking stalls, some of which immediately abutted the concrete curbing. That curbing which was situated adjacent to the travelled portion of the southbound road surface of the Thruway was separated therefrom by an expanse of grass or lawn mall. On this grassy area, set back 3 or 4 feet from the concrete curbing and easily accessible from the blacktop parking section was a row *216 of trash cans individually set apart. Utility poles with overhead mercury vapor lights, north of the overpass, were stationed 15 to 20 feet from the base of the overpass and then at 125-foot-distant intervals.
The access to the overpass was by means of an enclosed stairway whose concrete base was surrounded by a cement walk, about 40 to 50 feet in length. This walk extended from the access door to the stairway at right angles to the building and terminated at the grass mall separation between the Thruway and the parking area. At the termination of the sidewalk stood two lighted enclosed telephone booths. It was stipulated that the cement walk and the grassy mall area extending from the concrete curbing at the parking area to the shoulder of the road surface of the Thruway were under the maintenance, operation and control of the New York State Thruway Authority. Expert testimony revealed that at 40-foot intervals the concrete curbing was cut and the grassy mall “hollowed out ” for a paved concavity or gutter or depression for drainage purposes. There was no metal grill or grating to maintain a level grade along the top of the curbing or the mall.
On the evening of the day in question at about 10:00 p.m., claimants and their two childen parked their 1962 four-door Pontiac sedan in the blacktop parking area of the southbound Ramapo Service Area approximately 30 to 40 feet distant from the entrance to the enclosed stairway to the overpass, with the vehicle’s front wheels immediatley adjacent to the concrete curbing. This was the first time that the claimants had parked their automobile in this service area on the Thruway. At this time, the night was dark and clear. When the family had concluded using the facilities in the restaurant on the northbound service area it had started to rain. When they reached the base of the stairway Mr. Siedman, carrying his younger daughter, proceeded to the parked car, and, in view of the fact that the rain was increasing in intensity and many cars were parked between the concrete sidewalk and his own car, rather than walking across the heavily trafficked blacktop, he walked along the sidewalk and then used the grassy mall nearest to the curbing as the quickest and safest method. Mrs. Siedman, with the older daughter, followed the same course and when she was approximately 10 feet distant from the front of their parked vehicle, not seeing the depression, stepped into one of the drainage declivities and sustained the injuries alleged.
Claimants contend that the use of the grassy mall area for such a traversal was not denied by any signs prohibiting that use by the public and that impliedly the defendant had permitted and *217 was continuing to permit the same use because the lack of grass and the packed-down earth in a 4-foot width for a distance of nearly 40 feet indicated that many feet had walked thereon previously. The defendant responded that the mall area was to be used solely for the purpose of disposal of trash in the containers thereon and for decorative and lighting purposes. It further maintained that lighting was adequate for the parking area.
Regardless of nomenclature as to whether that portion of the grassy mall adjacent to the curbing constituted a path or sidewalk it is evident from the downtrodden earth that it had been used without restriction for a considerable period as a footpath. Failure of the defendant specifically by a sign or rail or fence or otherwise to prohibit the use of the grassy mall by pedestrians constituted an invitation to the public to use it for the same purpose that the claimants used it. A continuance of this bare footpath constituted a lure and attraction to the public and provided an alternative, accessible means of walking to the parked vehicles. (Heffron v. New York Cent. & Hudson Riv. R. R. Co., 223 N. Y. 473.) The defendant failed to provide by pavement painted design or sign a safe pedestrian access from the parking area to the enclosed entrance stairway to the overpass.
The defendant has the responsibility to correct a hazard or to warn of the existence of a zone of danger, by some means, particularly when injury may result to one who traverses unfamiliar territory for the first time in the dark in inclement weather. (Heffron v. New York Cent. & Hudson Riv. R. R. Co., supra.)
Accordingly, the defendant, the New York State Thruway Authority, is held liable.
Motions to dismiss the claim made by the defendant at the close of claimants’ proof and at the end of the entire case, upon which decision was reserved, are now denied.
The claim is restored to the Trial Calendar for continuation and presentation of proof on the issue of damages.